422-0041-WC. Brooke Hoots, Appellant by Jay Johnson v. Illinois Workers' Compensation Comm'n, Dollar General Appellee by John Hart. Mr. Johnson, you may proceed. Thank you, Your Honor. May it please the Court, we are here today to ask that this Court reverse the decision of the Workers' Compensation Commission wherein it found that the Appellant, and I apologize, I may say Petitioner just because of my Workers' Compensation history, did not suffer a work-related accident that arose out of in the course of her employment as that decision was against the manifest weight of the evidence and ask that the matter be remanded for findings consistent with TTD, PPD, and medical. Several factors are not in dispute. There is no dispute that the Appellee hired Appellant to work at its Woodson, Illinois store. At the time of hire, the Woodson, Illinois store was not yet complete. It was still under construction. Appellee specifically sent Appellant to the South Jacksonville, Illinois store for purposes of training. And that was along with all the other employees from Woodson, correct? As far as I know, Your Honor, I know that Appellant was. Okay, but the record seems to indicate she wasn't the only person who went to the training, right? That may be. So how did that turn her into a traveling employee when she was directed to one specific location for training? Because she was hired to work at the Woodson, Illinois store and it wasn't yet completed. She was sent specifically to the South Jacksonville, Illinois store for the purposes of training. Is that unusual? A company can't send somebody for training? It turns that means that travel is an essential part of the job? The travel doesn't necessarily. It's the fact that she was ordered to go to that specific spot for the purposes of training. Yes, I would say that any time an employee is sent to a location for training purposes, for that period of time while that employee is being sent to that location to train, that employee is a traveling employee. Do you have any cases that stand for that proposition? Just that the simple fact that training means they're traveling employees. Well, not the training, the fact that she was sent to a specific location to train. Okay. So that's the fact that she was sent there. Yes, it would make her a traveling employee. It's not her. She was hired to work in one specific location. She wasn't working in that location. She was sent somewhere to train. If she were not a traveling employee, looking under the McAllister decision, the fact that McAllister wasn't decided at the time that this matter was heard at the workers' compensation commission. The McAllister decision cuts away a lot of the, in my opinion, it adds clarity to the risk analysis. It gets rid of, I think many of these cases have strayed away from looking at a neutral risk when a neutral risk really wasn't the factor. It was a risk that's associated with the employment. McAllister tells us that there are three factors to look at or three instances where a, excuse me, where a, there were three types of employment related risks. Those would be risks that an employee is instructed to perform by the employer, an act that the employee has a common law duty to perform in an act that the employee might reasonably be expected to perform in conjunction with those work duties. In this situation, I think that the appellant falls nicely under both one and three of the McAllister analysis. She was instructed to go to this specific location to train. So she was doing an act that her employer had instructed her to do. And the fact that she parked at the and crossed the parking lot is certainly an act that is something that the employer might reasonably expect that its employee would do. And that's exactly what she did. Counsel, if you don't, if you can't establish that she was a traveling employee, then you don't come under the parking lot exception to the cases that suggest an injury that occurs off an employer's premises is non-compensable. So you have to get her established that she was a traveling employee, or you have no right to compensation. This parking lot wasn't owned by Dollar General, wasn't maintained by Dollar General, and the facts suggest she wasn't told to park there. Well, there was nowhere else for her to park. If you look at the, in my brief, the photos that are in 855 through 859 in the appendix, which are clearer pictures than what you see in the record, just with the various companies that had gone on there, there's no other reasonable spot for her to park. There's no street parking. If you look at that, if you look at that, the picture there, there are parking places that are joined the store. Ownership is not required for these parking lot cases. The Hoyas decision clearly holds for that proposition. Yeah, Hoyas stands for the proposition that if the employer provides the parking for the employee, then ownership and maintenance is irrelevant. But in this particular case, the evidence suggests she wasn't told to park there, and Dollar General didn't provide the parking for her, and they neither owned nor maintained the parking lot. So you don't fall under the Hoyas. If you look at that parking lot, I don't think that that, that it's... Counsel, excuse me, Counsel, if you're going to, if she established she was a traveling employee, then it doesn't make any difference. It's street risk. But if she's not a traveling employee, there's no way you're coming under the parking lot exception. Oh, and that's what I've, all along I've said this is not a parking lot case. That was something that the, I argued that point in the brief simply because the arbitrator and the commission had addressed it as a parking lot case. But this isn't a parking lot case, this is a traveling employee case. But Justice Hoffman's saying if you don't fall within, if we were to decide for whatever reason you don't fall within the traveling employee doctrine, what's your basis for compensability would be, if she's not a traveling employee, then under the Hoyas, she would fit within the parking lot exception. There is no ownership that's established that that parking lot is clearly meant for not only employees, but also customers to park. If you look at that picture, there's nowhere else that she could reasonably expect it to park. That parking lot is so much tied in with that, with that standalone business, that no one would think that it's not associated with that business. But she wasn't required, we have to admit she wasn't required or directed to park there, was she? And neither was the employee in the Hoyas. She was not required, there was nowhere else for her to park. The parking lot cases, they add an element of fault into these workers' compensation cases that should not be there. These parking lot cases, whether it be fault assigned to the injured worker or whether it be fault assigned to a business owner, adds an element that workers' compensation cases should not consider. It's a no fault system. I've seen some of these parking lot cases where there's an didn't clean the lot and there was a therefore an increased risk. That's adding a fault, that's adding a torque element to the analysis that shouldn't be there. We've seen cases where the employee may slip and fall, get injured and found that they took an unreasonable risk. That's not a factor that should be considered in workers' compensation cases and that's what these parking lot cases tend to do. I think with the McAllister decision, the McAllister decision narrows the scope of these parking lot cases to simply look at whether the act that the employee was engaged in was at risk associated with employment. I believe in this situation, that's what... How far do you take it? Are you saying that if an employee is injured on their daily commute to work because they're required to commute to work, McAllister applies and every accident that happens on the way to work is compensable? No, your honor, not at all. But in this situation here, she was ordered to train at this location. That's where she went. She fell feet, not blocks, not miles. She fell feet from the store's entrance on black ice that covered the parking lot of the store that she was specifically sent to train at. Everybody else who went there that day was subject to... the general public was subject to that same risk, right? The general public was not subjected to the risk of having to train at that location. She was. So again, your position is the fact that she was required to go to training, anything that happens when she gets there is compensable. Yes, she's a traveling employee. As a traveling employee, she is covered from the moment she leaves her home until the moment she returns. Yeah, we agree with you completely if in fact she's a traveling employee, but that's a real issue. Yes, and she is. The travel was an essential... and her duty here, her travel to this location was an essential part of her job duties, which at that time were training. She was not yet the employee at the store because her store was not yet completed. She had to travel to train. Her job at that point was to attend training. Okay, so you're asking us to find, and I'll put it bluntly, that anybody who's required to go to training is automatically a traveling employee. If they are sent to a location other than their normal place of employment, yes. Okay. Do you have any case law that suggests that that's correct? I don't have any case law that suggests that is correct other than the simple case law of the fact of the traveling employee doctrine in general. Again, traveling was required. I cite to the Curtis decision. This case is, in my opinion, analogous to the Curtis decision, and Curtis, that employee was... part of his job duties was to travel between two different bank branches. How is that the same as here? How is that the same as here since that, and Curtis, that employee traveled between two bank branches every day. Here, your client was not required to go to the location where she fell and then back to the location she was hired to work at, right? Because that store wasn't even finished. Had she ever been required to go to the store that she was constructed, right? So, she wasn't traveling between two locations. She was traveling to a location for... She was traveling to a location at the direction of her employer to train. Well, if she went to her original, which would have been the same had the store been completed that she was hired to work at, she would have been instructed to show up to that store, but not to go anywhere else. It's not a... So, my only issue and the only reason I'm bringing this up is when you say that Curtis is analogous to this situation, it isn't because that employee was traveling between two separate locations on a daily basis. Your client was traveling to one location. Right, but in Curtis, there is still no employer-provided parking. He still has to, in Curtis's case, walk blocks to gain access to the bank branch in the St. Charles, Illinois location where the injury happened. So, that is where I see that there is that connection. And again, she's instructed to go there. She is sent for that specific purpose to train at that location. Anything further, Mr. Johnson? No, Your Honor. Okay. You will have time in reply. Thank you. Mr. Harp, you may respond. May it please the court, counsel. We agreed that this, with the prior decision that this is a parking lot case, and it falls within the parameters of the Maxims of Illinois and the Maxims of Illinois has established a rule of law and a test that's been upheld for 56 years. And we believe that this is consistent with that and that the petitioner failed to, or the appellant failed to prove her, sustain a burden of proof in this matter that the case was compensable. We disagree with the counsel that this is a traveling employee situation. Not only was the appellant asked to attend training at the Jackson, the South Jacksonville location, but she was to work there until the Woodson store was open. It's in her testimony that she was going to continue to be an employee of the South Jacksonville store until such time as that she would transfer to Woodson. If she was found to be a traveling employee, then any employee in the state of Illinois that left their home to commute to work would be considered a traveling employee. That is contrary to the traveling employee doctrine, which states it has to be more than just a regular commute in order to be covered as compensable. Well, I asked Mr. Johnson about that. Normally we agree that a simple commute to work is not as the condition of her job to go to that site. So how do you respond to that? Well, she was ordered to attend work at the South Jackson location until her location of Woodson was open. So she was employed at the South Jackson location, which is seven miles away from the Woodson store until the Woodson store was open. Okay, was she ordered to go to that location? She was ordered to go to the South Jackson store. Does that change the legal landscape at all? The fact she was ordered to go there for training? I don't believe so because her training was just as if it were her normal job duties. Now, so would the argument be different if she was actually working in one store and then ordered to go to another store for training? I believe it would. I believe the Curtis case may apply. So if she had started her day at Woodson and was ordered to go to South Jackson and back and forth, then I think that in the process of her travel between the two stores, she would be considered a traveling employee. But I believe that she started her day at her home. She drove or we assume at her home and she drove to the store where she was working at when she was injured. This training wasn't necessarily an off-site training like one might expect to go on an airplane or other modes of transportation that is contemplated under the Traveling Employee Act. This was a commute from her home to a store location. Mr. Harp, Mr. Johnson has alluded to the McAllister decision. Are you familiar with that decision? I am familiar with that decision, Your Honor. He seems to be implying that that has changed the legal landscape on some of these mutual risk cases. What's your impression of whether or not McAllister applies? Well, I disagree that the first section of McAllister, so McAllister has a three-point test. As counsel had indicated, I don't believe that the first, I definitely don't believe that the first test applies or the first part of that test applies as the petitioner was not directed any specific area to park. She could have parked in a lot in any number of different parking spots which would have changed her course to come into the store. There was also a lot adjacent which she was not restricted to parking from. And I don't think there's any evidence to point that she wasn't able to park on the street in the record. So, there could have been any other place that she could have parked in to come into the store. With regard to the third act that might reasonably be anticipated, that has the same problem. As she wasn't directed, the employer couldn't anticipate where she was going to park or reasonably expect she was going to take a certain path to the doorway. And in that pathway that had the black ice. So, we believe that this matter falls under the maximum of Illinois test. Whether the parking lot was owned by the employer, which it was not, pursuant to the appellant's testimony. The employer did not exercise control over the parking lot. And the parking lot was not or she was not required to park in that lot or take a certain route to the doorway. We do have a public policy concern in regard to this issue that if the employer is put to a higher burden or a higher standard than any premise owner or property owner might be required for natural snow accumulation. There was no indication that the employer at all contributed to this black ice. So, this black ice was a natural occurrence that did not put her at greater risk than anyone else, the general public, if you want to call it that, or other employees. And finding it compensable would put the employer at a higher threshold than any property owner under the Premises Liability Act. So, in closing, we ask that the court uphold the decision of the Illinois Workers' Compensation Commission and find that the decision was not against the manifest way of the evidence. Thank you, Mr. Harp. Mr. Johnson, any reply? Again, this is not a commute case. She was, again, sent there specifically for the purpose of training. Talked about taking different paths to the store, parking in different lots. She fell right in front of the store. This is not one where she fell blocks and blocks away. She fell feet, and you can see from the pictures in A55 through A59 in my brief. She fell right in front of the store. Council helps illustrate my point about the public policies, talking about bringing fault into this. That should be outside and is outside the purview of the workers' compensation system. What her status may have been after November 19, 2017 is irrelevant. On November 19, 2017, she was specifically ordered by her employer to attend training at the South Jacksonville, Illinois store, a store not the store that she was hired to become an employee. If that could change in a week or 10 days, maybe looking at a different scenario. But on this very date, November 19, 2017, she was a traveling employee. She was in the course of her employment from the moment she left her home until she returned, and this injury arose out of her employment as she faced a reasonable and foreseeable risk. You don't dispute the issue that the Jacksonville store was the premises of her employer. No, it is a premises of her employer. Okay. And she had never worked at the Woodson store. That's correct. There was no Woodson store to work. So how did she become a traveling employee? She was sent there. She was traveling because she was sent there to train. No, a traveling employee is someone who premises and is required to travel to another location. And in this particular place, she never left her employer's premises. The Jacksonville store was the only employer's premises that her then current employment related to. She never related to the Woodson store. They never opened it. She never worked there. She didn't work there because she couldn't because she was sent there to train. I would view that as a traveling employee. Counsel, if that theory were correct, every time someone goes to work, they'd be a traveling employee because they were required to go to work. The training was a specific part. It was almost a conditioned precedent to her becoming an employee at the Woodson, Illinois store. But was she being paid for the training? She was working. That was her job then. But it's anyone's job if you're sent to train, that's part of your job. Okay. And if you train, if you leave your assigned premises and are told to go elsewhere to train, that's Curtis. But in this open, the only place she was working at that point in time was the Jacksonville store. I would disagree. She was hired to work at the Woodson, Illinois store. Part of that requirement was training. She was sent to South Jacksonville to train. So she's working for Dollar General, correct? Yes. Dollar General is the corporation that she was hired to work for? Yes. Do they have the right to direct her to any store that they own to work at? I assume that they would. I don't know what employment contracts she may have had, but as a general rule, that could be true. Okay. Mr. Johnson, are we exalting form over substance in your argument? Justice Hoffman raises a good point. She leaves her home and goes to the training site. Where is she traveling in between locations? She commutes to the work. She would have been commuting to Woodson had the store been open, as you indicated. Instead, she commutes to the training site. There is no movement back and forth between job sites, is there? Movement between the job sites? No, the movement is to the job site. This is where she was sent to train. If I sent one of my employees to go to the office supply store and that employee was injured in the course of that, I would think that that employee would be covered. Because they're not going to the usual place of employment. Travel was essential. Here, she would have had to go in one place, either Woodson or the training facility. I don't see how she was traveling between locations. She wasn't traveling between locations. She was traveling to a location. I think your argument would win if the store that she was hired to work at was open and she would arrive there at 8.30 in the morning and then was instructed to go to the other store location for training and then come back after three hours of the training. I think that's where we're having difficulty accepting your argument. And you know that. You have a tough argument and you were certainly advocating on behalf of your client. Thank you, Your Honor. Your time is up, Mr. Johnson. Any further questions from the court? Hearing none, I wish to thank counsel both for your arguments in this matter this morning.